(856 P.2d 1348)

No. 68,282

In the Matter of the Marriage of KAREN L. GLENN, *Appellee*, and CLIFFORD E. GLENN, *Appellant*.

Opinion filed July 30, 1993.

*Douglas E. Wood,* of Overland Park, for appellant.

*Ruben Jorge Krisztal,* of Shawnee Mission, for appellee.

Before LEWIS, P.J., ROYSE, J., and C. FRED LORENTZ, District Judge, assigned.

LEWIS, J.: This is an appeal in a domestic relations action. Clifford Glenn appeals from an order restricting his visitation rights with the children born to his marriage to Karen Glenn. For the reasons set forth in this opinion, we reverse and remand.

Clifford and Karen were divorced in 1990. Since that time, visitation by Clifford with their two children has been the subject of nearly constant litigation.

This appeal involves a trial to the court which took place on April 9, 1992. After that hearing was completed, the trial court

suspended Clifford's visitation rights until such time as he had completed a specific anger control program. Clifford appeals, arguing that he was denied a full and fair opportunity to present his evidence. We agree with Clifford's position in this regard, and we reverse the decision of the trial court.

This lawsuit contains the usual bitter and pointed accusations by both parties. Nothing would be served by recounting the unpleasant details, and we will not do so. We doubt that the parties' public accusations towards one another will be conducive to the emotional stability and well-being of the children. The only wrong committed by these children was being born to the marriage of Clifford and Karen. It is possible that the bitterness between Clifford and Karen is victimizing the children.

Clifford complains about the abrupt ending of the most recent trial and the refusal of the trial court to hear the testimony of Clifford or his present wife.

Although we cannot be certain as to the times, the parties advise us that the court commenced hearing evidence in this case at around 9:00 a.m. on the date in question. Karen presented her case first; she testified herself, and her testimony was followed by the testimony of her mother. Although we will not repeat the details, the testimony of Karen and her mother was to the effect that Clifford is an unfit and abusive person. The record shows that Karen was still on the stand when the court took its luncheon recess at approximately 12:00 p.m. The hearing was scheduled to resume at 2:00 p.m. and, when it resumed, Karen continued with her testimony and ultimately completed that testimony.

Some time in the afternoon, approximately 3:00 or 3:30, Clifford started to put on witnesses to refute the testimony of Karen and her mother. Clifford called five witnesses. These witnesses generally testified that Clifford was a good person and not an abusive husband or father.

At approximately 5:00 p.m., the trial court abruptly called a halt to the proceedings and said:

"You may step down. Thank you, sir. That will have to conclude all the evidence in the case. The Court is prepared at this time to announce its rulings, and if you would take your pencils out, I will tell you what the Court has decided."

At this point, neither Clifford nor his present wife had an opportunity to testify, and neither was permitted to do so. Clifford argues that the trial court should have either extended the trial that day or made some other arrangement to hear his testimony and that of his wife.

Clifford argues that the actions of the trial court deprived him of his due process right to be heard.

"The fundamental requisite of due process is *notice* and an *opportunity for a full and complete hearing.*" *Carrigg v. Anderson,* 167 Kan. 238, 246, 205 P.2d 1004 (1949). It appears to us that, without any apparent justification, the trial court denied Clifford the opportunity of a full and complete hearing. Clifford's former wife was permitted to present all of her evidence; Clifford was not. We consider this to be a clear case of reversible error.

Justice Lockett summarized the importance of granting to litigants their day in court in *State ex rel. Stephan v. O'Keefe,* 235 Kan. 1022, 686 P.2d 171 (1984). Although the setting was different from the one at hand, the principles expressed still apply:

"The constitutional guarantee of providing for open courts and insuring a civil remedy for injuries to persons and property is a statement of our philosophy and a general rule which can be used to solve civil conflicts. This right is generally regarded as one of the most sacred and essential constitutional guarantees. However, the guarantee creates no new rights but merely is declaratory of our fundamental principles. In light of this guarantee, it is the policy and the obligation of the state to furnish and of the courts to give every litigant his day in court and a full and ample opportunity to be heard. This right extends to everyone who may be materially affected by the action of the court in a legal proceeding. The guarantee secures and places every citizen within the protection of the law of the land. It insures the right of every person protected by it to seek remedy by court action for any injuries done to him or his personal property. The guarantee entitles the citizen to have justice administered according to the law without denial or delay. A litigant is assured the right to prosecute or defend an action, provided he prosecutes or defends the action as contemplated by law. Since a prisoner can sue or be sued in this state he must be afforded the right to his day in court.

"*The right to a day in court means the right to be afforded an opportunity to be heard.*" (Emphasis added.) 235 Kan. at 1027.

We believe the words of Justice Lockett apply equally to the case now before this court. It appears to us that Clifford has

been denied one of our most sacred and essential constitutional guarantees.

. The appellant brings to our attention the case of *In re Marriage of Goellner*, 770 P.2d 1387 (Colo. App. 1989). That case involved a domestic relations action very similar to the case at bar. The facts indicated that the father had been given some five and one-half hours to put on his evidence. The trial court allotted the mother only 30 minutes because of a prior arbitrary decision to limit the hearing to 6 hours. By ending the trial in this manner, the mother and her witnesses were not allowed to testify. She appealed, and the trial court's action was reversed. The words of the Colorado court are particularly applicable to the case at bar:

"The opportunity to be heard, an inherent element of due process, must be granted at a meaningful time and in a meaningful manner. [Citation omitted.] Balanced against this obligation of the trial court to accord each party due process is its need to regulate its calendar and to manage efficiently the case before it. [Citation omitted.] *Nevertheless, a court's interest in administrative efficiency may not be given precedence over a party's right to due process, which includes the right to cross-examine to meet opposing evidence and to oppose with evidence.* [Citation omitted.] Hence, because the mother was allotted only one-half hour to present her case-in-chief, we conclude that she was denied due process.

"It is, evident from the record that the trial court was adamant in allowing only six hours to each side to present that party's case. That may well have been adequate for purposes of presenting the party's own evidence; however, the six hours was also to include the time spent in cross-examining the opposing party's witnesses. The court allowed no flexibility in the time period allocated. This constitutes prejudicial error in that the mother was not given the opportunity to testify or present witnesses regarding issues of custody and the valuation of the marital estate.

"That the barred evidence had considerable significance is revealed by the court's own later comments in denying the motion for new trial, the court stated that the testimony of certain witnesses would have been 'enlightening.' Furthermore, the trial court stated it was 'regrettable' that it was unable to hear certain evidence because of the mother's time having been exhausted.

"The record demonstrates that counsel did not make a proper estimate of the time that would be needed for the court to hear this case. And, we emphasize that counsel has a duty to make an accurate estimate, as nearly as possible, of the time which is required to try a case in order to assist the court in managing its dockets. Nevertheless, while dockets in the domestic relations division of the court may be crowded, and while the trial

court may have an obligation to move matters before it as rapidly as possible, *litigants are nevertheless entitled to have sufficient time to make an orderly presentation of their case.* [Citation omitted.] Accordingly, we conclude, regardless of counsel's miscalculation of time, that under the facts and circumstances presented here, the mother was denied a full and fair hearing, and the refusal of the court to allow the mother to present testimony was an abuse of discretion. [Citations omitted.]" 770 P.2d at 1388-89.

We believe the reasoning of the Colorado court is applicable to this matter. We realize the court's dockets are crowded and the trial court's time is limited. However, we have always found that the practice of law is not a 9 to 5 business and neither is the job of a judge. We see no justification in this record for the trial court's denying Clifford his day in court. As is pointed out by the Colorado decision cited above, administrative efficiency is important but cannot take precedence over a party's right to due process. The trial court should have found the time to allow Clifford and his wife to testify. Its failure to do so was reversible error.

That the testimony of Clifford was of significance is clear from the record. The trial court remarked that it wished to hear Clifford's testimony. Its failure to do so cannot be justified under the facts shown.

Clifford also raises the issue of the erroneous admission into evidence of the report of Dr. Appleton. Clifford contends this report should not have been admitted because it was hearsay. We agree.

Because of our decision to reverse as set forth earlier, the issue concerning Dr. Appleton's hearsay report is moot. However, we point out that we are unable to see from the record now before this court that the report of Dr. Appleton falls under any of the exceptions to the hearsay rule. We conclude, therefore, that the admission of the report was error. We note this decision for the assistance of the trial court at the retrial of this matter.

We reverse the decision of the trial court and remand for a complete retrial of the issues presented. In the interest of justice and to assure that on retrial the evidence will be given fresh attention, we require that the retrial be conducted before a different trial judge.

Reversed and remanded.