NOT DESIGNATED FOR PUBLICATION

No. 118,734

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AYSE CARMAN,
*Appellant*,

v.

BRYANT HARRIS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVEN M.P. O'GRADY, judge. Opinion filed May 24, 2019.
Affirmed.

*Ayse Carman*, appellant pro se.

*Bryant Harris*, appellee pro se.

Before STANDRIDGE, P.J., GARDNER, J., and WALKER, S.J.

PER CURIAM:  Ayse Carman is the mother of a child fathered by Bryant Harris, the appellee. Carman appeals from the district court's determination, after an evidentiary hearing of child custody, child support, parenting time, medical expenses, and related issues. But each of the decisions she challenges rests in the discretion of the district court, and Carman fails to show any abuse of discretion.

1

*Factual and procedural background*

E.C. was born to Ayse Carman in October 2014. In December 2014, the Kansas Department for Children and Families (DCF) filed a petition to determine paternity, seeking reimbursement for cash assistance expended and seeking to establish child support. After his voluntary entry of appearance, the hearing officer found Bryant C. Harris to be E.C.'s father, granted DCF an award of $818 for the reimbursement of past support, and ordered Harris to pay child support.

In August 2015, the court approved a temporary stipulated parenting plan which provided that Carman is the sole legal and residential custodian of E.C. with Harris exercising supervised parenting time every other week. The Journal Entry from August 2015 also provided that "each party shall inform the District Court Trustee in writing of any change of name, residence and employer (with business address) within 7 days after such change." Harris began new employment in April 2016 but failed to inform the court, DCF, or Carman. DCF contacted him about his employment and income in relation to his child support, but Harris refused to provide the information. In August 2016, Carman filed a motion to show cause and order to provide financial information, motion for child support modification to reflect Harris' change of employment, and motion for half of medical expenses. Soon after, Harris moved to modify custody, parenting time, support, and to change E.C.'s surname.

Both parties' motions were set for an expedited hearing with a hearing officer in August 2016, but that hearing was cancelled and the case was sent to the district court. At the hearing in June 2017, Harris appeared with counsel and Carman represented herself. The district court denied Carman's pretrial motion for a continuance and her motion for a guardian ad litem, then took evidence. Harris and Harris' mother testified, as did Carman.

2

E.C. has special needs—he was born with a hemangioma tumor and is diagnosed with autism and a developmental delay. Harris agreed to Carman having sole legal custody in their 2015 parenting plan out of concerns of the financial costs of challenging it. The parenting plan was set up so that Harris had parenting time with E.C. only if Carman was present, and Carman was the one who typically determined when and where the parenting time would occur. Harris testified that he saw E.C. about 13 times per year in 2015 and 2016 and about 5 times so far in 2017. Harris testified that he tried to have more visits, but that Carman would not agree to them or did not pick a place that was feasible for him. Despite his limited visits with E.C., Harris testified that he wants to spend more time with E.C. and that E.C. recognizes Harris as his father. Harris testified that he is aware of E.C.'s particular health and behavioral needs and that although he has not been involved in any doctor's appointments so far, he would like to participate in those decisions and provide for E.C.'s needs.

Harris lives in a home with his mother, father, and his eight-year-old daughter from a previous relationship. Harris takes care of and pays for all his daughter's basic needs, including her schooling, doctor appointments, and her activities and said he is willing to do the same with E.C.

Harris was diagnosed with bipolar disorder in 2010. From 2008 to 2012, during college and graduate school, Harris testified that he was not properly medicated. During that time, he was involved in an incident in which he was charged with child molestation and child endangerment of his then two-year-old daughter. Those charges were dropped— he pleaded guilty to disturbing the peace and was sanctioned with two years of unsupervised probation. As part of his sentencing, Harris was to abide by the directives of health care professionals in managing his bipolar disorder. Harris testified that he takes medication every day and that he sees medical professionals for medication management and to manage his bipolar disorder.

Carman cross-examined Harris and his mother in detail. When she was cross-examining Harris' mother, the court warned her that she was using up her time. The judge told her:

> "Ms. Carman, I want to remind you, you get half the time for the afternoon. And I'm struggling to see how this line of questioning is going to help me come up with a parenting plan for [E.C]. So I don't want you to run out of time and not be able to explain to me what you want.
> "But you can use your time however you like. I just wanted to make sure that you realize that we have basically three hours set aside the afternoon and you only get an hour and a half. And you've used about a half hour on this witness."

Carman's cross-examinations of Harris and Harris' mother were long and detailed, often getting into specifics about the parties' relationship before E.C. was born, specific disagreements, and Harris' relationship with his family. The court warned her several times about the time limitations and expressed concern that Carman's line of questioning was not helping him decide the issues before him.

By the time it was Carman's turn to present her case, she had used all but about ten minutes of her allotted time. Carman read her prepared written statement asking to continue with sole legal and residential custody of E.C. She listed several reasons to award her sole custody, including the prior child molestation allegations against Harris, his mental health and bipolar disorder, the absence of a parent/child relationship, and E.C.'s autism and special needs.

The district court granted the parties joint legal custody of E.C., awarding Carman primary residential placement and Harris unsupervised parenting time.

Carman then filed a motion for recusal and a motion for new trial or to reconsider. The district court denied those motions and, on its own motion, reassigned the case to a

4

different judge. Carman later filed a motion to vacate a void judgment and a motion for contempt and sanctions. Carman appeals.

*Did the district court deny Carman due process?*

Carman alleges that the district court denied her due process by failing to expedite her child support modification motion, not sending the parties to mediation, not issuing a scheduling order, excluding evidence of Harris' bipolar disorder and criminal background, and not giving her enough time to present her case.

*Procedural failure*

Before we can reach the merits of Carman's claims, we must address a procedural issue. Generally, issues not raised before the district court, including constitutional issues, cannot be raised on appeal. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 729, 317 P.3d 70 (2014). Although exceptions exist to the general rule, Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34) requires an appellant to explain why an issue not raised below should be considered for the first time on appeal. Carman has not followed this rule, and our Supreme Court has stated that we should strictly enforce it. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). The law requires us to hold Carman to the same standards as attorneys as far as complying with court rules. See *Guillory v. State*, 285 Kan. 223, 229, 170 P.3d 403 (2007). Because Carman is procedurally barred from raising her due process claim on appeal, we do not reach its merits.

But even had we reviewed this claim on its merits, it would have failed. Whether a court provided due process under specific circumstances raises an issue of law over which an appellate court's review is unlimited. *Matter of Ellison*, 305 Kan. 519, 533, 385 P.3d 15 (2016) (quoting *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1272, 136

P.3d 457 [2006]). The fundamental requisite of due process is notice and an opportunity for a full and complete hearing. *Carrigg v. Anderson*, 167 Kan. 238, 246, 205 P.2d 1004 (1949). Carman fails to show any deprivation of her right to be heard and fails to show prejudice. Both are required.

> "A deprivation of procedural due process must result in some tangible prejudice to warrant relief. See *Tennessee Secondary School Athletic Assn. v. Brentwood Academy*, 551 U.S. 291, 303-04, 127 S. Ct. 2489, 168 L.Ed.2d 166 (2007) (party may not obtain relief for procedural due process violation found to be harmless beyond a reasonable doubt); *Walker v. U.S.D. No. 499*, 21 Kan.App.2d 341, 344-45, 900 P.2d 850, *rev. denied* 257 Kan. 1097 (1995); see also *Perry v. Blum*, 629 F.3d 1, 17 (1st Cir.2010) ('[A] party who claims to be aggrieved by a violation of procedural due process must show prejudice.')." *In re Marriage of Liu*, No. 109,822, 2014 WL 1796152 (Kan. App. 2014) (unpublished opinion).

Take, for example, Carman's weightiest substantive due process claim—that she was denied due process by having only ten minutes in which to present her case. Carman cites two cases in which the district court's failure to give parties enough time to present their cases was found to violate due process. In *In re Marriage of Glenn*, 18 Kan. App. 2d 603, 607, 856 P.2d 1348, *rev. denied* 253 Kan. 858 (1993), the mother had most of the day to present her case but the father's evidence was cut short before he or his current wife had a chance to testify. We reversed, finding that the trial court deprived father of his right to be heard. *In re Marriage of Goellner*, 770 P.2d 1387, 1389 (Colo. App. 1989), is similar. There, the Colorado Court of Appeals found a due process violation because father had five-and-a-half hours to present his evidence, leaving just 30 minutes to mother.

But here, the district court gave Carman the same amount of time it gave Harris and told both parties months before the hearing how much time each would have. The district court gave both parties adequate notice of the total time available for presentation

6

of evidence and it split that time evenly between Carman and Harris. The pretrial order, resulting from the pretrial conference held on February 27, 2017, stated: "Trial is scheduled for June 21, 2017 beginning at 1:30 p.m. for a period of ½ day" and "The trial will be completed in the timeframe set forth and additional time will not be permitted absent leave of Court. Each party will [be limited to] half the allotted time for the presentation of their direct and cross examinations, as well as any rebuttal testimony."

Carman chose to use nearly all her time cross-examining Harris rather than presenting her own case, despite the district court's questions to her about the usefulness of her line of questioning, which at times dealt with events that occurred three or more years before the hearing, and the court's warnings about the little time remaining to her. After the court warned her for the third time during her cross-examination that she was almost out of time, Carman replied, "I know, your Honor. I'm just trying to find my final statement to make to the Court. That's all I would like to ask for." She then resumed her cross-examination.

When Carman finished her cross-examination, Harris' attorney asked if she would have time to cross-examine Carman. The court replied that it hoped to rule at 4:45 p.m. but would give her time to do so. Carman then said she was nervous and had written a statement that she wanted to read. She then read her statement, which spans seven pages of transcript, and was cross-examined by Harris' attorney. Before concluding the evidence the court asked Carman, "Is there anything else you want to say?" She replied, "No, Your Honor. That's all."

The transcript of proceedings shows that the district court provided Carman an opportunity to be heard in a meaningful manner—the same opportunity it gave the opposing party. How Carman chose to use her time was up to her. She used her time as she saw fit despite the court's warnings and she admitted at the end of her prepared

7

statement that she had nothing else she wanted to say. Carman has failed to show she was deprived of her opportunity to be heard.

Nor has Carman shown prejudice. The essence of Carman's due process claim seems to rest on the notion that if she had had more time in which to present more evidence, the district court would not have granted Harris joint custody. But she has not showed us what evidence she intended to present that she was precluded from presenting due to time constraints, or how that evidence would have changed the ultimate result on joint custody or any other issue. In other words, she has shown no prejudice. The same is true for her other due process claims as well.

*Did the district court abuse its discretion by awarding joint legal custody?*

Before the hearing, Carman had sole legal custody of E.C. After the hearing, the parties had joint legal custody. Carman claims that this constituted an abuse of discretion.

A district court's modification of an order of custody, residency, visitation, or parenting time is governed by K.S.A. 2018 Supp. 23-3218.We review a district court's order granting or denying such modification for an abuse of discretion. *In re Marriage of Grippin*, 39 Kan. App. 2d 1029, 1031, 186 P.3d 852 (2008). In fact, this standard of review applies to each of the claims Carman raises on appeal. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Carman's most compelling argument that the district court abused its discretion in awarding joint legal custody is that the district court relied on the wrong statutory factors. The district court relied on the factors set forth in the 2013 version of K.S.A. 23-3203. But because the hearing took place in June 2017, the court should have relied on the

statutory factors in the 2016 version. Factors in that version and not in the 2013 version include K.S.A. 2016 Supp. 23-3203(a)(1) (each parent's role and involvement with the minor child before and after separation), K.S.A. 2016 Supp. 23-3203(a)(5) (the emotional and physical needs of the child), and K.S.A. 2016 Supp. 23-3203(a)(10) (the ability of the parties to communicate, cooperate, and manage parental duties). The court did not rely on the correct statute.

Nonetheless, the record shows that the court did consider most of those factors. It was aware of the parents' prior roles, their lack of cooperation, and the child's special needs. From the testimony, it appears that the relationship between Carman and Harris, as well as the relationship between Carman and Harris' mother, is very contentious. Carman testified that she and Harris have "massive communication issues." The testimony was full of allegations of hateful text messages, lies, or the withholding of information from the other party, and racially-charged rhetoric. Harris even testified that Carman contacted his current employer, a federal agency, claiming that he had been dishonest in his application. This resulted in a workplace investigation. The court also entered an Order for Supervised Exchange and an order for OurFamilyWizard.com, a website that records communication between the parties. This shows that the court did consider at least some of the factors listed in the 2016 statute.

More importantly, Carman fails to show that the outcome would have been any different had the court considered those factors. In Kansas, neither parent has a vested interest in the custody or residency of any child as against the other parent, regardless of the child's age, and there is no presumption that it is in the best interests of a young child to give custody or residency to the mother. K.S.A. 2018 Supp. 23-3204. Instead, the policy reflected in our statutes shows a preference for joint legal custody, so the parties have equal rights to make decisions in the best interests of the child, over sole legal custody arrangements. K.S.A. 2018 Supp. 23-3206. Considering this statutory preference and Carman's failure to show that the district court would have reached a different

9

conclusion about the legal custody arrangement for E.C., we find that any error by the district court in evaluating the factors was harmless and did not affect the outcome of the case. The same is true for her other claims of error as to granting joint custody.

*Did the district court abuse its discretion by awarding Harris unsupervised parenting time?*

Carman claims that the district court abused its discretion by awarding Harris unsupervised parenting time that did not comply with the Johnson County Family Guidelines. Although the Johnson County Family Guidelines contain valuable information, they are just that—guidelines that no court has adopted. See *In re Marriage of Hair*, 40 Kan. App. 2d 475, 481, 193 P.3d 504 (2008). They are not binding on any judge, and judges are not required to explain their decision to deviate from them. *In re Marriage of Marcus and Ording*, No. 111,811, 2015 WL 3632435, at *9 (Kan. App. 2015) (unpublished opinion).

A district court's modification of an order of custody, residency, visitation, or parenting time is governed by K.S.A. 2018 Supp. 23-3218. Kansas law specifies that a parent is entitled to reasonable parenting time unless the court determines that it would seriously endanger the child's physical, mental, moral, or emotional health. K.S.A. 2018 Supp. 23-3208. The court awarded parenting time after specifying that E.C. should have a relationship with his father, sibling, and extended family. Carman has not shown that the court's parenting time order was based on an error of law, based on an error of fact, or that no reasonable person would take the view adopted by the trial court. We find the district court did not abuse its discretion by modifying the parties' parenting time.

*Did the district court err by modifying child support?*

Carman next claims that the district court abused its discretion by modifying child support without Harris' domestic relations affidavit (DRA). She also claims four adjustments were made in error: (1) the insurance adjustment; (2) the lack of parenting time adjustment; (3) the multiple family adjustment; and (4) the retroactive date for modification and failing to assess sanctions.

We review a district court's child support award for an abuse of discretion. *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 607, 351 P.3d 1287 (2015).

Kansas courts follow the Kansas Child Support Guidelines (Guidelines) when determining awards of child support. K.S.A. 2018 Supp. 23-3002(a). Any person who moves for a child support order or modification order shall include in the filing a completed DRA and proposed child support worksheet. K.S.A. 2018 Supp. 23-3002(b). Harris filed a DRA on March 3, 2017. Harris testified, however, that his income increased in March 2017, yet he did not file an updated DRA before the hearing as the statute and Kansas Supreme Court Rule 139(f) (2019 Kan. S. Ct. R. 207) require.

Carman claims that this increase in income was not accounted for in Harris' previously-filed DRA, and she is likely correct. At the hearing, Harris testified that his current salary—including his wage increase—was $49,940. In his DRA, Harris reported that he made $3,793 per month—$45,516 per year. But the court prepared and adopted two child support worksheets—one for dates before March 2017 and one for dates after March 2017. The worksheet adopted by the court for dates "after 3/17" shows the higher number of $49,540. The district court ordered child support of $260 per month from September 1, 2016, to March 2017, which it calculated by using the lower income. But it also ordered child support of $295 per month from March 1, 2017, on, which reflects the higher income. Because the court's order reflects that it relied on these worksheets instead

11

of on Harris' outdated DRA in calculating the amount of child support, we find no prejudice to Carman from Harris' failure to update his DRA, although we do not sanction Harris' failure to update his DRA.

*Insurance adjustment*

Carman claims that the court erred in giving Harris a $96 insurance deduction for September 2016 to July 2017 because he was not providing insurance for E.C.—she claims that Harris' testimony that he was providing insurance for E.C. at the time of the hearing is false. She also argues that the district court erred in changing E.C.'s insurance without substantial competent evidence that it would serve E.C.'s best interests.

But Harris testified that he paid insurance for E.C., which was deducted out of his paycheck. Carman provides no evidence showing otherwise. The district court credited Harris' testimony, as it was permitted to do. On appeal, we are not to weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. *Cresto v. Cresto*, 302 Kan. 820, 835, 358 P.3d 831 (2015); *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In other words, we must resolve any conflicts in evidence to the benefit of the party that prevailed before the district court.

Carman also claims that the district court abused its discretion in permitting Harris to change E.C.'s insurance. Carman alleges that Harris' employer-sponsored health insurance "has limited or no coverage for autism therapies, dentist, and ophthalmology" and that Harris asked Carman to stop taking E.C. for appointments because of the co-pays. But she does not cite to where this statement was allegedly made and we have reviewed the record and have not been able to locate any such statement.

12

*Parenting Time Adjustment*

The district court denied Carman's motion to add a 15% or more parenting time adjustment to Harris' child support obligations. Carman claims that the 2015 child support worksheet included this adjustment, but she failed to include that child support worksheet in the record on appeal.

A court "may make an adjustment based on the historical non-exercise of parenting time as set forth in the parenting plan." Kansas Child Support Guidelines § IV.E.2.d. (2019 Kan. S. Ct. R. 102). Adjustments to child support obligations are discretionary; the district court is not required to make an adjustment. *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 611, 351 P.3d 1287 (2015); *In re Marriage of Schrag*, No. 93,422, 2005 WL 1430471 (Kan. App. 2005) (unpublished opinion). Even though Harris may not have exercised all the parenting time included in the parenting plan, Carman has not shown that the district court abused its discretion by not adding a 15% parenting time adjustment to Harris' child support obligation.

*Multiple Family Adjustment*

Carman next argues that the district court improperly adjusted Harris' child support obligation based on the multiple family adjustment. The multiple family application is used to adjust the child support obligation of the parent not having primary residency when that parent has a legal financial responsibility to support other children who reside with him or her. Application of this adjustment is discretionary when using the adjustment results in a gross child support obligation below the poverty level. Kansas Child Support Guidelines § III.B.6. (2019 Kan. S. Ct. R. 89).

The undisputed evidence shows that Harris has a daughter from a previous relationship who resides with him and that he has a legal financial responsibility to

13

support her. Carman has not shown that the district court abused its discretion in applying the multiple family adjustment to Harris' child support obligation.

*Retroactive date for modification and failure to assess sanctions*

Carman claims that the district court abused its discretion by making its child support modification retroactive to September 2016. Instead, she claims that the modification should be retroactive to May 2016—one month after Harris' income increased. But K.S.A. 2018 Supp. 23-3005(b) specifies that the court may make a modification of child support retroactive to the first day of the month following the filing of the motion to modify. That is what the court did here.

Carman then requests a sanction under the Guidelines § V.B.2. for Harris' concealment of his wage increase that equals the amount of child support she is owed for that time. This provision gives a district court authority to impose sanctions against a parent who fails to disclose a material change of financial circumstances and to assess a credit on the child support worksheet in favor of the other parent. Kansas Child Support Guidelines § V.B.2. (2019 Kan. S. Ct. R. 107); *In re Marriage of Silliman*, No. 117,373, 2017 WL 4455300, at *1 (Kan. App. 2015) (unpublished opinion).

But a district court's decision whether to assess a sanction under § V.B.2. of the Guidelines is discretionary. *In re Marriage of Johnson*, 50 Kan. App. 2d 687, 688, 336 P.3d 330 (2014). The district court retains the discretion not to sanction a party who fails to make the disclosure required by the Guidelines § V.B.1. *Johnson*, 50 Kan. App. 2d at 694. Carman has not shown that the district court abused its discretion in declining to assess a sanction here.

14

*Did the district court abuse its discretion by denying Carman's motion to recover medical expenses for E.C.'s birth?*

Carman next claims that the district court erred in denying her motion for medical expenses. This issue involves interpretation of the Kansas Parentage Act, K.S.A. 2018 Supp. 23-2201 et seq. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

In August 2016, Carman moved for Harris to pay half of the $6,108.81 medical expenses she incurred during and immediately following her pregnancy with E.C. Carman contends that the district court said Carman had already received $818 so was due no more, but it erred because the $818 she received was not for birth expenses. But the court also found that Harris was not responsible for any expenses before the date of the paternity order. After that date, the court found that Harris owes a proportionate share of the child's support and expenses. The court denied recovery of the mother's birth expenses from 2014 because they predated the date of the paternity order and were not included in it. We find no error in that.

*Did the district court err by denying Carman's motion for a new trial?*

Carman argues that the district court erred by denying her motion for a new trial.

It is within the discretion of the trial court to grant or deny a new trial under K.S.A. 2018 Supp. 60-259(a). Appellate courts will not disturb a district court's ruling on a motion for a new trial except upon a showing of an abuse of discretion. *Miller v. Johnson*, 295 Kan. 636, 684-85, 289 P.3d 1098 (2012).

15

Carman's motion for new trial argued that the district court had committed procedural and legal errors violating her due process. That motion also contained several issues that she said were "to be amended." The district court denied this and other motions before transferring the case to another judge.

On appeal, Carman fails to argue the merits of her motion for new trial. Instead, she argues that the court should not have ruled on her motion at an "informal conference" and that the district court judge should have recused himself before, instead of after, ruling on her posttrial motions. Carman has abandoned on appeal the claims she made in her motion for new trial, and she instead brings an argument about recusal. Issues not adequately briefed are deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). And failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue. *State v. Pewenofkit*, 307 Kan. 730, 731, 415 P.3d 398 (2018). Carman has failed to show any abuse of discretion in the district court's decision to deny her motion for new trial.

*Did the district court err by awarding Harris attorney fees and by modifying its previous order while this appeal was pending?*

For her final two issues on appeal, Carman argues error by Judge Schoenig, the district court who handled the case after Judge O'Grady recused himself. She contends Judge Schoenig erred by granting attorney fees and by modifying the original order before her appeal was heard.

But these rulings took place long after Carman filed and docketed her notice of appeal, and Carman did not file a separate notice of appeal after Judge Schoenig made her rulings. We lack jurisdiction to review those rulings. See *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016) (Generally, Kansas appellate courts have

16

jurisdiction to entertain an appeal only if the appeal is taken by following the procedural statutes); K.S.A. 2018 Supp. 60-2103(a) (directing that a notice of appeal must be filed within 30 days from "entry of the judgment").

Affirmed.